IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CAROLYN R. YOUNT, )
)
      Plaintiff, )
)
vs. ) Case No. 13-cv-498-GKF-TLW
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
      Defendant. )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Carolyn R. Yount seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **AFFIRMED**.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if

supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 37-year old female, applied for Title II and Title XVI benefits on September 29, 2009, alleging a disability onset date of January 1, 2008. (R. 161-65, 166-67). Plaintiff claimed that she was unable to work due to a number of issues, including migraines, pain, nerves, and depression. (R. 126). Plaintiff's claim for benefits was denied initially on May 11, 2010, and on reconsideration on August 6, 2010. (R. 77-80, 81-89, 92-97). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on November 8, 2011. (R. 26-67). The ALJ issued a decision on December 19, 2011, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 7-25). The Appeals Council denied review, and plaintiff appealed. (R. 1-4; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured through September 30, 2009. (R. 12). Plaintiff had not engaged in substantial activity since January 1, 2008, her alleged disability onset date. Id. The ALJ found that plaintiff had severe impairments of "headaches; depression; anxiety; problems with left shoulder, knees, back and hands; and shortness of breath." Id. The ALJ also found that plaintiff had three medically determinable but nonsevere impairments: obesity, hypertension, and diabetes. (R. 13). The ALJ determined that plaintiff's "obesity is not to the point that it interferes with her daily activities." Id. Plaintiff's hypertension and diabetes were controlled with medication. Id.

Applying the "paragraph B" criteria to plaintiff's depression and anxiety, the ALJ found that plaintiff had mild limitations in her activities of daily living; moderate limitations in social

functioning and in concentration, persistence, and pace; and no episodes of decompensation. (R. 13). Based on those findings, the ALJ concluded that plaintiff's mental impairments did not meet or medically equal a listing. (R. 13-14). Plaintiff's physical impairments also failed to meet or medically equal a listing. (R. 13).

The ALJ then reviewed plaintiff's testimony and the medical evidence. (R. 15-19). Plaintiff testified that "migraines, depression, low back pain, knee pain, bilateral carpal tunnel syndrome and fibromyalgia" prevented her from working. (R. 15). Plaintiff's diabetes was controlled with diet and medication. Id. Plaintiff was diagnosed with asthma in 2007 but had not been hospitalized in the past year and took medication to control her symptoms. Id.

Plaintiff had surgery on her left shoulder to repair a rotator cuff tear. Id. Her hands went numb with use. Id. She could lift ten pounds. Id. Plaintiff's low back pain mostly impacted her left side, radiating "down her legs and up her back." Id. Plaintiff had difficulty squatting and climbing stairs. Id. She did not drive regularly. Id. She could sit for forty minutes, walk one block, and stand for five minutes. Id. Standing caused her pain in her back and knees, which would "crack, pop, ache and swell" from arthritis. Id. Her knees would swell "about every other week," and she would elevate her legs above her head for an hour. (R. 16). Plaintiff also complained that cold and rainy weather increased her pain. (R. 15).

Plaintiff experienced headaches three times a week. Id. Plaintiff treated the pain by taking medication and lying down in a dark room. Id. When the medication was not effective, plaintiff's headaches would "last all day." Id. Plaintiff also suffered from depression and anxiety, which her counselor attributed to stress. (R. 15-16). Plaintiff took medication (Prozac) and found that it helped. Id. She saw a counselor once a month for depression. (R. 16).

Plaintiff complained that she was forgetful, had difficulty concentrating, and became irritable around people. (R. 16). At home, plaintiff did "some dishes and laundry" and some shopping. Id. Plaintiff had no appetite and slept only four hours a night. Id.

With respect to her medical records, plaintiff had been a regular patient since 2005. Id. Plaintiff complained of a shoulder injury in September 2008, December 2008, and March 2009. Id. Left shoulder x-rays taken in March 2009 were unremarkable, but an MRI performed in April 2009 revealed that plaintiff had "left shoulder pain with impingement syndrome." (R. 16-17). Plaintiff had surgery for a "[l]eft shoulder labral tear," "[m]arked subacromial impingement syndrome with marked subacromial bursitis," and "[a]dvanced acrimioclavicular arthropathy." (R. 17). In October 2009, she had a "surprisingly good" range of motion post-surgery, but by December 2009, plaintiff "did have some soreness and a restricted range of motion." Id.

Plaintiff also complained of knee pain and had x-rays of her left knee in December 2008. (R. 16). The x-rays revealed "narrowing of the medial compartment of the knee." Id. She received an injection in her left knee in May 2009. Id. Plaintiff received additional x-rays of her left knee in June 2010, which showed "mild joint space narrowing; small marginal osteophyte formations and no fracture or dislocation." (R. 17). She was diagnosed with "mild osteoarthritis." Id.

X-rays of plaintiff's lumbar spine in July 2009 were unremarkable. (R. 16). Her subsequent treatment notes from March 2011, June 2011, and July 2011 note that plaintiff had chronic low back pain and/or polyarthralgias. (R. 17-18). A second set of x-rays of her lumbar spine, dated August 2011, were unremarkable. (R. 18).

Plaintiff was seen several times for diabetes treatment. In March 2009, her diabetes "was uncontrolled due to excess intake of diet soda, lack of activity, and diet." (R. 16). Her treatment

4

notes indicate that she was taking medication to control her diabetes in June 2010. (R. 17). Her physician noted in March 2011 that her diabetes was uncontrolled. (R. 17-18).

Plaintiff also took medication for cholesterol. (R. 17). She was diagnosed with asthma in March 2011 after she complained that she had trouble breathing. (R. 17-18). Plaintiff also complained of problems with her hands, but x-rays from August 2011 were unremarkable. (R. 18).

The Commissioner ordered both a consultative physical examination and a consultative psychological examination. Plaintiff attended the psychological examination in December 2009. Dr. Denise LaGrand evaluated plaintiff and found that plaintiff "had some mild depressive and anxious symptoms that did not meet the criteria for major depression or generalized anxiety." (R. 17). Plaintiff reported that she had not had any mental health treatment. Id. Dr. LaGrand diagnosed plaintiff with "[p]ain disorder, due to general medical condition and with psychological features" and "[m]ood disorder, NOS with mixed depressed and anxious symptoms." Id. Plaintiff later saw a counselor three times: in June 2010, June 2011, and July 2011. (R. 18). During these appointments, plaintiff complained that she did not like to leave the house or be around other people. Id. The counselor diagnosed plaintiff with depressive disorder and anxiety disorder. Id. The counselor also assigned plaintiff with GAF scores, beginning with 40 and increasing to 45 and then, by the final visit, 50. Id.

Plaintiff's consultative physical examination took place in March 2010. Id. Plaintiff walked with a cane but could walk without it. Id. "She had difficulty walking on tiptoes and heels due to back pain," but her spine alignment was normal. Id. Plaintiff had full range of motion but some tenderness over her lumbar spine. Id. Plaintiff also had no issues with grip strength or gross and fine manipulation of objects. Id. The consultative examining physician

assessed plaintiff with "[m]ajor depression," "[h]istory of back pain, probably mechanical, neurologically intact," "[d]iabetes mellitus, type II," "[h]istory of asthma," and "[h]istory of migraines." (R. 17).

The ALJ adopted the opinions from the health center where plaintiff was a long-term patient and from the surgeon who performed plaintiff's shoulder surgery. (R. 18). The ALJ gave "substantial weight" to the opinion of Dr. LaGrand, who performed the psychological consultative examination and "significant weight" to the opinion of the physical consultative examining physician. (R. 18-19). The ALJ also considered the opinion of the counselor, a licensed clinical social worker, who saw plaintiff three times, even though the counselor did not qualify as an acceptable medical source. (R. 19). The ALJ ultimately rejected her opinion, finding that it was not consistent with the evidence. Id.

The ALJ found plaintiff's "complaints of totally disabling pain" not credible. (R. 17). The ALJ cited to the normal x-ray results, plaintiff's successful surgery, and her limited mental health treatment as evidence that plaintiff was not as limited as she claimed. (R. 18). The ALJ also noted that plaintiff's noncompliance with diet and exercise caused her diabetes to become uncontrolled. Id. Finally, the ALJ cited to a number of inconsistencies between plaintiff's testimony and the record. Id.

Based on this evidence, the ALJ found that plaintiff retained the residual functional capacity to perform light work with additional limitations. (R. 14). Plaintiff could stand/walk only in two-hour intervals; could not climb ropes, scaffolds, or ladders; could occasionally climb stairs and ramps, bend, stoop, squat, kneel, crouch, crawl, operate foot controls, and push/pull; had a slight limitation on fingering, feeling, and gripping; could only work in low light, low noise environments; and could not reach overhead. Id. Plaintiff also needed to avoid dust, fumes,

gases, cold, and damp. (R. 14). To accommodate her mental impairments, the ALJ limited plaintiff to simple, routine, and repetitive work with limited stress and content; a "slight limitation on contact with the public;" no teamwork; and only routine contact with co-workers and supervisors." Id. With these limitations, plaintiff could not perform her past work, but she could perform other work. (R. 19, 20). Accordingly, the ALJ found plaintiff not disabled. (R. 20).

**The ALJ Hearing and Plaintiff's Medical Records**

The undersigned has reviewed the transcript of the ALJ hearing and plaintiff's medical records. Plaintiff does not allege that the ALJ's findings conflict with the evidence in the record; therefore, the undersigned does not see any reason to discuss those documents in detail.[1] Any discussion of the medical records or plaintiff's testimony can be addressed in the analysis of plaintiff's allegations of error.

## ANALYSIS

On appeal, plaintiff raises four points of error. First, plaintiff argues that the ALJ violated her due process rights by failing to make a full and fair inquiry into her disability status when he did not address plaintiff's request for a full psychological consultative examination. (Dkt. 16). Next, plaintiff argues that the ALJ erred at steps four and five by failing to address all of the limitations caused by plaintiff's impairments in the residual functional capacity findings and in the hypothetical given to the vocational expert. Id. Third, plaintiff argues that the ALJ failed to

---

[1] The undersigned has found only one error in the ALJ's factual findings. In addressing plaintiff's testimony regarding her recent weight loss, the ALJ noted that plaintiff lost fifteen to twenty pounds in the last month. (R. 16). However, plaintiff actually stated, in response to the ALJ's question, that she had lost the weight within the last six months. (R. 52). This error is unrelated to any of the issues raised in plaintiff's initial brief and has no bearing on the outcome of the case.

7

perform a proper credibility analysis. Id. Finally, plaintiff argues that the ALJ failed to address her obesity in his residual functional capacity findings. Id.

**Due Process/Developing the Record on Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ was required to rule on her August 2011 request for a full psychological consultative examination.[2] Id. In that letter to the ALJ, plaintiff stated that her GAF scores, assigned by a licensed clinical social worker, indicated a need for additional testing. (R. 76). Plaintiff argues that she has several diagnoses – headaches, depression, and anxiety – that require additional testing in order to provide the ALJ with sufficient evidence to make a determination. (Dkt. 16). Plaintiff also argues that the ALJ used the lack of testing against her in finding "that her treating source's opinions were given little weight. . . ." Id.

The Commissioner argues that plaintiff bears the burden of establishing her impairments and limitations and that the ALJ is not required to act as plaintiff's advocate in developing the record. (Dkt. 18). Further, the Commissioner argues that the ALJ has "broad latitude" in deciding whether to order a consultative examination. Id.

The ALJ does have "broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.2d 1162, 1166 (10th Cir. 1997). Hawkins, citing the applicable regulations and other case law, holds that, despite the ALJ's discretion, a consultative examination must be ordered in three instances:

> "where there is a direct conflict in the medical evidence requiring resolution;"
>
> "where the medical evidence in the record is inconclusive;" or
>
> "where additional tests are required to explain a diagnosis already contained in the record."

---

[2] Plaintiff did not raise the issue during the November 2011 ALJ hearing. (R. 26-67).

Id. (citations omitted). Hawkins notes that "[t]he difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." Id. at 1167. In that situation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

Plaintiff cites these three circumstances in her initial brief but does not provide any argument or evidence to support which circumstance would have required the ALJ to order a psychological consultative examination. Plaintiff's failure to properly develop this argument could be construed as a waiver of the issue. See Murrell v. Shalala, 43 F.3d 1388, 1390 n. 2 (10th Cir. 1994) (holding that "perfunctory complaints fail to frame and develop an issue to invoke appellate review"). (Dkt. 16).

In this case, plaintiff alleged depression as a disabling impairment when she completed her adult disability report. (R. 226). The ALJ ordered the mental status exam, performed in December 2009, ostensibly because plaintiff's medical records did not include any mental health treatment, a fact that Dr. LaGrand noted in her consultative examination report. (R. 403). Dr. LaGrand also noted that plaintiff did not report any "[b]arriers to current treatment." Id. Although plaintiff alleged depression in August 2009 and in her examination with Dr. LaGrand in December 2009, plaintiff did not seek treatment for depression until June 29, 2010. (R. 575-76). After her initial appointment with a licensed clinical social worker, plaintiff did not return for treatment for an entire year. (R. 577-78). In June 2011, plaintiff reported that she was taking Prozac but "does not feel it is strong enough to be effective in managing her depression." Id. Plaintiff attended a third session in July 2011, complaining of "social anxiety." (R. 579). Plaintiff also reported that she was "feeling better since her Prozac has been increased." Id.

Plaintiff's treatment notes from her general practitioner indicate that plaintiff was first assessed with depression and prescribed Prozac in March 2010. (R. 563). During her appointment in March 2010, plaintiff had complained of "feeling down most of the time," having difficulty concentrating, and suffering from insomnia. Id. Plaintiff's dosage was increased in June 2010 and again in June 2011, but the treatment records contain no additional information to explain the reason for increasing the dosage other than plaintiff's complaints to the social worker. (R. 543, 556).

Based on this evidence, the undersigned finds no evidence that any of the three conditions cited in Hawkins exist in this case. Plaintiff's depression and anxiety are documented in the record, but plaintiff received minimal treatment for those mental impairments. The records do not indicate that plaintiff's depression and anxiety were not controlled by medication. The medical records do not conflict with Dr. LaGrand's conclusion that plaintiff exhibited signs of mild depression and anxiety, nor is the evidence of plaintiff's impairment inconclusive, either in diagnosis or in severity.[3] Additionally, there is no evidence that additional testing was required to explain the diagnoses of depression and anxiety.

The undersigned also finds no error in the ALJ's failure to make an explicit ruling denying the request for a psychological consultative examination. The Tenth Circuit does not have a rule requiring an ALJ to rule on a request for a consultative examination. See Harlan v.

---

[3] Plaintiff argues, without any citation to authority, that the ALJ's findings are not supported by a mental residual functional capacity assessment form in the record upon which the ALJ could have relied to assess her residual functional capacity. (Dkt. 16). However, the regulations do not require the ALJ to have an agency medical expert's opinion in order to assess the severity of a mental impairment. See 20 C.F.R. §§ 404.1520a(d)(2), (e)(4); 20 C.F.R. §§ 416.920a(d)(2), (e)(4); 20 C.F.R. §§ 404.1546(c). See also Chapo v. Astrue, 682 F.2d 1285, 1288-89 (10th Cir. 2012); Bernal v. Bowen, 851 F.2d 297, 302-03 (10th Cir. 1988). Additionally, it is the ALJ's duty to assess residual functional capacity, and his findings are not required to correspond directly to any single opinion in the record. See Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004) (cited in Chapo, 682 F.3d at 1288-89).

Astrue, 510 Fed.Appx. 708, 712 (10th Cir. 2013) (unpublished)[4]. Rather, the decision to order a consultative examination depends on the facts of the case. See id. Accordingly, "the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing." Id. In Harlan, however, the claimant did not argue that the ALJ failed to develop the record. See id. at 713.

Shortly after deciding Harlan, the Tenth Circuit addressed the ALJ's responsibility to rule on a request for consultative examination when the claimant *does* argue failure to develop the record.[5] See Lundgren v. Colvin, 512 Fed.Appx. 875, 878-79 (10th Cir. 2013). In Lundgren, as in this case, the claimant argued that the ALJ was required to order a consultative examination because the ALJ rejected the opinion of a non-acceptable medical source. See id. at 878. The Tenth Circuit determined that the ALJ was not required to explain his reasons for not ordering a consultative examination because "the ALJ relied on other, current evidence," including evidence from an acceptable medical source. Id. Accordingly, the Tenth Circuit was satisfied that the ALJ had acted with discretion in "tacitly" deciding not to order a consultative examination. Id.

---

[4] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

[5] Both Harlan and Lundgren discuss two unpublished district court cases from the Northern District of Oklahoma as part of their analysis. See Harlan, 510 Fed.Appx. at 711-12; Lundgren, 512 Fed.Appx. at 878-79. Those district court cases were remanded for the ALJ to make a determination on the need for consultative examinations. However, in analyzing both district court cases, the Tenth Circuit determined that there was an issue, other than the general question of ruling on the need for additional evidence, that required remand. In Taylor v. Astrue, No. 09-cv-129-CVE-FHM, 2010 WL 3277425 (N.D.Okla. August 17, 2010) (unpublished), the court remanded the case because the evidence in the record was sparse and the claimant's date last insured was possibly extended, leaving the ALJ with no evidence to consider for part of the claimant's insured period. In Fortna v. Astrue, No. 05-cv-587-SAJ (N.D. Okla. May 1, 2007), the court remanded the question of ordering a consultative examination because the evidence was stale and because the previous testing was not in the record.

In this case, as in Lundgren, the ALJ reviewed all of the evidence of plaintiff's mental health treatment and gave great weight to the records in which plaintiff was prescribed Prozac and to Dr. LaGrand's findings that plaintiff had mild depression and anxiety. Therefore, the ALJ relied on "current" evidence. As Harlan states, "[w]ithout a statute, regulation, or case requiring an ALJ to rule on a request for a consultative examination or to provide reasons for the ALJ's ruling, the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing. Harlan, 510 F.App'x at 712. Plaintiff cites no evidence to demonstrate that the ALJ did not meet this responsibility, and the undersigned cannot find any evidence in the record that contradicts the ALJ's findings. For these reasons, the undersigned recommends a finding of no error on this issue.

**Residual Functional Capacity and the Hypothetical to the Vocational Expert**

Plaintiff contends that the ALJ made numerous errors in assessing her residual functional capacity and failed to link those findings to evidence in the record. (Dkt. 16). Specifically, plaintiff argues that the ALJ's accommodations for plaintiff's mental impairments do not address the ALJ's step two findings regarding plaintiff's limits in social functioning and concentration, persistence, and pace. Id. Plaintiff also argues that the ALJ should have found limits related to plaintiff's GAF scores. Id. As a result of these errors, plaintiff argues that the ALJ's hypothetical is also erroneous. Id.

The Commissioner argues that the ALJ's hypothetical to the vocational expert must only include those limitations found in the residual functional capacity assessment. (Dkt. 18). The Commissioner further argues that the specific language of the step two "paragraph B" findings do not have to be included in the residual functional capacity findings and that the ALJ properly

12

accounted for plaintiff's mental limitations. Id. Finally, the Commissioner argues that the ALJ properly considered plaintiff's GAF scores. Id.

As an initial matter, the undersigned notes that plaintiff's argument is not a step five argument but a step four argument, in which plaintiff essentially challenges the ALJ's residual functional capacity findings. Hypothetical questions posed to a vocational expert "must reflect with precision all of [a claimant's] impairments, but they need only reflect impairments and limitations that are borne out by the evidentiary record." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (citing Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1992) and Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)). Plaintiff does not argue that the hypothetical fails to match the residual functional capacity findings. Rather, plaintiff argues that the ALJ should have found additional limitations at step four and, by extension, included them in the hypothetical at step five. This distinction is significant because a claimant bears the burden of proof at step four, while the Commissioner bears the burden of proof at step five. See Langley v. Barnhart, 373 F.3d 1116, 1118 (10th Cir. 2004).

At step two, the ALJ determined that plaintiff had moderate limitations in social functioning and in concentration, persistence, and pace. (R. 13). At step four, the ALJ determined that plaintiff retained the residual functional capacity to perform light work with mental restrictions of "simple, routine, and repetitive work; limited stress and content; slight limitation on contact with the public; no teamwork; and routine contact with co-workers and supervisors." (R. 14). Plaintiff argues that these limitations do not address the ALJ's step two findings. (Dkt. 16).

The Tenth Circuit has recently addressed this issue, holding "step two and step four are different standards." Banks v. Colvin, 547 Fed.Appx. 899, 903 (10th Cir. 2013) (unpublished).

13

"To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" Id. (citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.1988)). "To find a disability at step four, on the other hand, requires that the claimant's specific functional limitations are such that she is unable to perform her past relevant work." Id. (citing 20 C.F.R. § 404.1520). The ALJ is not required to include the broad categorizations of the "paragraph B" limitations in the hypothetical to the vocational expert. See Jimison ex rel. Sims v. Colvin, 513 Fed.Appx. 789, 793 (10th Cir. 2013) (unpublished). Instead, the ALJ is required to assess the "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p. See also Jimison, 513 Fed.Appx. at 793.

Contrary to plaintiff's argument, the ALJ's residual functional capacity findings address plaintiff's limitations on social functioning and on concentration, persistence, and pace. Plaintiff's contact with the public and with co-workers is limited, and plaintiff will not be required to do any work that taxes her concentration or causes undue stress. These limitations on plaintiff's residual functional capacity are consistent with the step two findings, and plaintiff has pointed to no specific evidence that would require greater functional limitations.

Plaintiff also places too much emphasis on the role of GAF scores in evaluating her residual functional capacity. The Tenth Circuit has held that GAF scores may be helpful in formulating residual functional capacity findings, but they are not essential components of accurate findings. See Zachary v. Barnhart, 94 Fed.Appx. 817, 819 (10th Cir. 2004) (unpublished) (citing Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002)). The Tenth Circuit also has held that GAF scores are only one piece of evidence to be

considered and are particularly unhelpful when the source who assigns the score fails to explain the reasons for the rating. See id. In other words, the ALJ is not required to discuss GAF scores. See id. Most recently, the Tenth Circuit noted that "the new Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed., 2013) has discontinued its use because of '[the scores'] conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" Krchmar v. Colvin, 548 F.App'x 531, 534 n.2 (10th Cir. 2013).

Here, the ALJ notes the scores in his discussion of plaintiff's three treatment sessions with a licensed clinical social worker, so it is clear that the ALJ considered them. (R. 18). However, the ALJ was not required to discuss them. See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) (citations omitted) (holding that "an ALJ is not required to discuss every piece of evidence" but must discuss "the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") The GAF scores are neither uncontroverted, based on the routine care plaintiff received, nor probative, as the licensed clinical social worker saw plaintiff only three times in a year and was not an acceptable medical source qualified to provide an opinion.

Plaintiff also argues that the ALJ failed to take into account plaintiff's headaches, shortness of breath, and pain disorder. First, the ALJ did not find that plaintiff's "pain disorder" was a "severe impairment." (R. 12). He found that she had "problems with left shoulder, knees, back and hands." Id. He accommodated those impairments by limiting plaintiff to standing in two hour intervals, by restricting her postural changes, by eliminating overhead reaching, and by finding that plaintiff had a slight limitation on the use of her hands. (R. 14). He also limited her exposure to cold and damp, which plaintiff testified would trigger arthritis pain. (R. 14, 15, 46). The ALJ's limitation on avoiding dust, fumes, and gases accommodates plaintiff's shortness of

breath, which is caused by asthma. (R. 14). Similarly, restricting plaintiff to low light and low noise environments would decrease triggers for plaintiff's migraine headaches.[6] (R. 14, 47).

The ALJ's residual functional capacity findings are supported by substantial evidence and accommodate all of plaintiff's severe impairments. For this reason, the undersigned recommends a finding of no error on this issue.

**Credibility**

Plaintiff argues that the ALJ used boilerplate language to support his credibility findings and improperly relied on scant evidence of plaintiff's noncompliance with treatment to find her not credible. (Dkt. 16). The Commissioner argues that the ALJ applied the credibility factors and tied his findings to the evidence.

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . .

---

[6] The ALJ did not specifically discuss the link between plaintiff's headaches and these restrictions, but the findings are consistent with the record evidence, namely plaintiff's testimony that she treated her headaches with medication and by avoiding noise and light. (R. 47). Plaintiff testified that sometimes her medication worked quickly and sometimes it did not. Id. To the extent plaintiff testified that her headaches would cause her to miss work, the undersigned is satisfied that the ALJ's credibility findings are sufficient to demonstrate that the ALJ found this testimony not credible. Id. The undersigned recommends finding that any failure to discuss plaintiff's headaches more thoroughly is harmless error because the medical records do not indicate any functional limitations resulting from plaintiff's headaches. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012) (finding harmless error under the circumstances of the case when the ALJ failed to address a side effect of medication).

to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

In evaluating the medical evidence, the ALJ specifically noted those circumstances in which the medical records contradicted plaintiff's complaints of disabling pain. The ALJ cited to plaintiff's successful shoulder surgery, a number of normal x-rays, and the conservative treatment that plaintiff received for knee pain. (R. 16). The ALJ also cited the minimal mental health treatment that plaintiff received in evaluating her credibility regarding her claims of depression and anxiety. (R. 19). Further, the ALJ noted that plaintiff made varying statements regarding her level of activity. (R. 18). Finally, the ALJ cited to plaintiff's noncompliance with diet and exercise to demonstrate that plaintiff's diabetes could be controlled. Id. This analysis is sufficient to support the ALJ's determination that plaintiff was not entirely credible.

**Obesity**

Finally, plaintiff argues that the ALJ erred by failing to discuss the impact of her obesity after finding at step two that it was a nonsevere impairment. (Dkt. 16). The Commissioner argues that the ALJ stated that he had considered plaintiff's nonsevere impairments and that this statement is sufficient to meet the ALJ's burden to consider all of plaintiff's impairments. (Dkt. 18).

The ALJ is required to consider all limitations, including those that are not severe, in making his findings regarding a claimant's residual functional capacity. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The Tenth Circuit has held that when an ALJ finds that an impairment is non-severe at step two, he must still include some discussion at step four in order

to satisfy the courts that he has properly considered any limitations arising from that impairment. See Wells v. Colvin, 727 F.3d 1061, 1064-65 (10th Cir. 2013). As to plaintiff's obesity, "[a]n ALJ must consider 'the combined effects of obesity with other impairments' and 'evaluate each case based on the information in the case record.'" Arles v. Astrue, 438 Fed.Appx. 735, 740 (10th Cir. 2011) (quoting SSR 02-1p) (unpublished).

Here, the ALJ specifically noted that plaintiff's "obesity is not to the point that it interferes with her daily activities," citing plaintiff's height and weight as of October 2011. (R. 13). Further, in assessing plaintiff's residual functional capacity, the ALJ noted that he had considered all of plaintiff's symptoms. (R. 14). The Court is permitted to "take the ALJ at his word" when he states that he has considered all the evidence. Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009). For these reasons, the undersigned recommends a finding of no error on this issue.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision in this case be **AFFIRMED**.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by November 19, 2014.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition;

receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 4th day of November, 2014.

_____
T. Lane Wilson
United States Magistrate Judge