# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN R. YOUNT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 13-CV-498-GKF-TLW |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge T. Lane Wilson on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #22] and the Objections thereto filed by plaintiff, Carolyn R. Yount ("Yount"). [Dkt. #23]. The Magistrate Judge recommended the Commissioner's decision be affirmed. Yount objects to the Magistrate Judge's Report and Recommendation, arguing (1) the ALJ failed to order a consultative psychological examination, (2) the ALJ failed to weigh properly evidence of Yount's moderate limitations on social functioning, persistence, pace, and concentration, Yount's GAF scores, and Yount's non-severe impairments, including headaches, (3) the record does not contain substantial evidence supporting the ALJ's determination that Yount's testimony was "not entirely credible," and (4) the ALJ failed to evaluate Yount's obesity properly. For the reasons below, the court adopts the Magistrate Judge's recommendation and affirms the ALJ's denial of benefits.

## I. Procedural History

Yount filed her applications for supplemental security income and disability benefits on September 29, 2009 and October 13, 2009, respectively. [R. 161-67]. The Social Security Administration denied the applications initially and on reconsideration. [R. 77-89, 92-97]. ALJ Gene M. Kelly held an administrative hearing on November 8, 2011. [R. 14]. By decision dated December 19, 2011, the ALJ found that Yount was not disabled. [R. 21]. On June 10, 2013, the Appeals Council denied review. [R. 1-4]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a *de novo* review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a

different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

### III. ALJ's Decision Not to Order Mental Health Consultative Examination

Yount first objects to the ALJ's decision not to order a comprehensive psychological consultative examination ("CE"). As a result, Yount argues, the ALJ failed to develop the record fully. Yount agrees with the Magistrate Judge that *Hawkins v. Chater*, 113 F. 2d 1162, 1166 (10th Cir. 1997) identifies the three circumstances requiring a consultative examination:

(1) where there is a direct conflict in the medical evidence requiring resolution;
(2) where the medical evidence in the record is inconclusive;
(3) where additional tests are required to explain a diagnosis already contained in the record.

Yount notes three sources of evidence regarding her mental health. First, Yount received a mental status consultative examination, which is not as thorough as a comprehensive psychological consultative examination, in December 2009 from Dr. Denise LaGrand. Dr. LaGrand concluded "Ms. Yount has some mild depressive and anxious symptoms that do not meet the criteria for major depression or generalized anxiety," and noted Yount's diagnosis as "[m]ood disorder, [not otherwise specified] with mixed depressed and anxious symptoms." [R. 406].[1] The ALJ gave Dr. LaGrand's evaluation "substantial weight." [R. 18].

Second, Yount received a physical consultative examination from Dr. Wojciech L. Dulowski in March 2010 in which Dr. Dulowski included "Major Depression" in the final assessment, but provided no further explanation or description of any mental health examination. [R. 434-35]. The ALJ gave Dr. Dulowski's evaluation "significant weight," but only refered to sections of Dr. Dulowski's report related to Yount's physical symptoms. [R. 19].

---

[1] Yount complains briefly that her reported head injuries make additional examination necessary. Yount's complaint is not persuasive, as Dr. LaGrand accounted for the reported injuries during the mental status examination. [R. 404].

3

Finally, Yount visited a licensed clinical social worker ("LCSW") three times, in June 2010, June 2011, and July 2011. [R. 575, 577, 579]. At each visit, Yount reported her symptoms to the LCSW, who noted the "BH POV [Purpose of Visit] Code or DSM Diagnosis" associated with the visit. During the first visit, the LCSW assigned the general code 311 for "depressive disorder [not otherwise specified]." At the two visits in 2011, the LCSW assigned code 296.30 for "major depressive disorder, recurrent unspecified," and added code 300.00 for "anxiety disorder not otherwise specified." From the record, it appears that the assignment of a diagnosis code was based on Yount's symptoms as she reported them to the LCSW during the visit. The LCSW is not an "acceptable medical source"—*see* SSR 06-03p—and did not have an on-going treatment relationship with Yount. The records from these visits do not reveal any formalized mental testing beyond the patient interview. The ALJ gave the LCSW's opinion "little weight" because it was not consistent with the "objective medical evidence or the claimant's current level of functioning." [R. 19].

According to Yount, Dr. LaGrand's boilerplate definition of a mental status exam—"This exam is a brief estimate of cognitive abilities and general functioning. It is not considered to be a comprehensive psychological evaluation." [R. 403]—represented Dr. LaGrand's conclusion that additional testing was necessary. To the contrary, Dr. LaGrand's statement merely defines the scope of her examination of Yount. Dr. LaGrand does not draw any conclusion about whether the ALJ needs any additional evidence to determine disability, nor would it be proper for her to have drawn such a legal conclusion.

Yount also complains that the "varying assessments and diagnoses" in the three sources described above create a conflict in the medical evidence requiring resolution under *Hawkins*' first prong. Not so. While the specific codes varied from report to report, the record presents a

uniform picture of Yount's mental health. All three sources note Yount's depressive symptoms, albeit using slightly different terms. Dr. LaGrand, a mental health specialist who had the benefit of a full mental status examination, concluded that Yount's symptoms did not rise to the level of major depression. While Dr. Dulowski and the LCSW, who appear to have relied primarily, if not exclusively, on Yount's reporting of her symptoms with no independent mental examination, reported a different diagnosis or diagnosis code, these variations do not amount to a conflict in the medical evidence requiring a comprehensive psychological CE.

Ultimately, Yount complains that the ALJ erred by failing to order a comprehensive psychological CE because there is some evidence in the record that Yount experiences depression and anxiety. However, the ALJ noted similar evidence, and accordingly, *ordered a mental status examination* with Dr. LaGrand. The ALJ was not required to order, in addition, a comprehensive psychological CE when the mental status examination report amply explained the evidence of depressive and anxious symptoms. Yount's objection is overruled.

### IV. Consideration of Limitations and Impairments

Yount claims the ALJ erred in multiple ways when formulating Yount's residual functional capacity ("RFC"). First, at step two of the disability analysis, the ALJ found Yount had moderate limitations in social functioning and in concentration, persistence, and pace. [R. 13]. At step four, the ALJ defined Yount's RFC, limiting Yount to light work with mental restrictions of "simple, routine, and repetitive work; limited stress and content; slight limitation on contact with the public; no teamwork; and routine contact with co-workers and supervisors." [R. 14]. Yount claims the ALJ's RFC does not adequately address the limitations found at step two. Yount's principal argument is that "moderate" limitations in social functioning and in concentration, persistence, and pace can interfere with productivity, and even with the safety of

co-workers and the public. Yount's argument addresses the potential severity of "moderate" limitations at a theoretical level, never attempting to show that her specific "moderate" limitations present difficulties beyond those reflected in the ALJ's RFC. The limitations articulated in the RFC are supported by substantial evidence in the record.

Yount also argues the ALJ failed to discuss the meaning of Yount's Global Assessment of Functioning ("GAF") scores. The ALJ's decision mentioned the three GAF scores to which Yount refers, and noted some of the major problems identified by the LCSW who assigned the score. [R. 18]. Contrary to Yount's argument, the ALJ was not required to discuss the GAF scores in further detail, as they constitute opinion evidence from a source who is not an "acceptable medical source." *See* SSR 06-03p (LCSWs are not "acceptable medical sources"). As a result, the ALJ was required to consider the scores, but did not have to discuss the scores in detail.

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. *Id*.

The ALJ's decision explained the weight given the GAF scores, and allows a subsequent reviewer to follow his reasoning in this regard. The ALJ explained that the opinions of the LCSW, Ms. Bingham, which includes the GAF scores assigned by Bingham, were based on only three visits and did not come from an "acceptable medical source." [R. 19]. As a result, the ALJ afforded Ms. Bingham's opinions, which obviously includes the GAF scores, "little weight." [*Id*.]. Importantly, the GAF scores are not "uncontroverted" as they were in *Williams v. Astrue*, 2008 WL 4224947 at *7 (W.D.Okla. 2008)—cited by Yount—because medical evidence from acceptable medical sources provided substantial evidence supporting the RFC. In sum, Yount

identifies authority requiring the ALJ to consider the GAF scores and to explain the weight given to them, which he did. None of the authorities Yount cites required the ALJ to *discuss* these GAF scores in any more detail than he did. The ALJ's decision meets the requirements of SSR 06-03p.

Finally, Yount complains the ALJ did not explain adequately the connection between the limitations imposed in the RFC and the medical evidence as is required. *See Whittle v. Colvin*, 2015 WL 630923 at *4 (N.D.Okla. February 12, 2015) (slip opinion) (ALJ must include in RFC assessment a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence"). Contrary to Yount's argument, the ALJ provided just such a narrative. [*See* R. 14-19]. In that section, the ALJ describes and cites the medical evidence supporting each of the limitations in the RFC. [*See id.*].

Yount specifically complains the ALJ did not explain the connection between Yount's propensity for migraine headaches and the RFC. The ALJ cited to testimony and medical evidence of Yount's headaches multiple times. [*See* R. 15, 17-18]. As the Magistrate Judge noted, the RFC contains a requirement that Yount "must have low light and low noise." [R. 14]. None of Yount's other symptoms and conditions provides a likely basis for this limitation. Although the RFC does not make the connection between the evidence of headaches and the limitation on light and noise in the work environment perfectly explicit, the narrative discussion supports this limitation with the testimony and medical evidence cited. Furthermore, the resulting RFC, which included a limitation apparently based on Yount's propensity for headaches, was, if anything, beneficial to Yount's case. Yount does not argue that the limitation on light and noise is inappropriate or somehow disadvantages her in the disability determination process. Yount's objection is overruled.

7

## V. Credibility Determination

Yount objects to the ALJ's determination that some of Yount's statements regarding her limitations were not credible. "Subjective measures of credibility . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence" are "peculiarly within the judgment of the ALJ." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Specifically, Yount claims the ALJ erred in concluding that Yount's diabetes "is controlled with oral medication and diet." [R. 15]. Yount argues the ALJ failed to consider the factors articulated in *Teter v. Heckler*, 775 F.2d 1104, 1007 (10th Cir. 1985) regarding a claimant's failure to comply with treatment: "(1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse." These factors only apply when a claimant's failure to undertake treatment precludes an award of benefits. *Id*. In this case, the ALJ considered Yount's failure to diet and exercise as part of *determining her credibility*, not as the basis for the denial of her claims. Accordingly, the ALJ was not required to go through the *Teter* factors. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In any event, the record contains substantial evidence that Yount had failed to diet and exercise, was counseled to do so by her physician, and was given alternatives that accommodated her complaints about knee pain. [R. 303].

Yount makes several other complaints about the ALJ's credibility determination, none of which is persuasive. Yount claims the ALJ ignored her work history, including her work prior to the alleged disability onset date in 2008 and an effort at part-time work in 2009. In fact, the ALJ noted Yount's work history. [R. 15]. While the ALJ's decision does not discuss specifically

Yount's work prior to the alleged onset date, it is clear that the ALJ considered Yount's work history. In fact, the ALJ questioned Yount about her entire work history during Yount's testimony at the administrative hearing. [R. 36-37]. Yount also argues the ALJ, in concluding that Yount made inconsistent statements regarding her condition, ignored that some of her symptoms wax and wane. To the contrary, the hearing transcript shows the ALJ was fully aware that symptoms wax and wane. [R. 44-45, 53]. Yount also argues the ALJ did not properly consider her testimony or her GAF scores. The ALJ considered both, but did not credit these sources of evidence to the extent that evidence conflicted with more reliable medical evidence. Finally, Yount argues that her testimony would have been bolstered by additional psychological testing. This argument is derivative of Yount's first objection that the ALJ should have ordered a consultative psychological examination.

The ALJ's credibility assessment is supported by substantial evidence in the record. Yount's objection is overruled.

## VI. Consideration of Obesity

Finally, Yount argues the ALJ failed to evaluate her obesity properly. Yount did not claim that her obesity was an impairment in her initial applications, and neither she nor her attorney mentioned obesity at the hearing before the ALJ. [R. 28-67, 226]. Yount has not cited any medical evidence regarding her obesity in her objection.

The ALJ determined Yount's obesity constituted a non-severe impairment. [R. 13]. The ALJ concluded Yount's "obesity is not to the point that it interferes with her daily activities." [*Id*.]. Yount objects, claiming the relevant Social Security Ruling—SSR 02-1p—states that "the impact of obesity upon the claimant's ability to perform work related activities must be considered in arriving at" the RFC. [Dkt. #23, p. 8]. Yount argues because the ALJ only

considered her obesity's impact on the activities of daily living, and not on work related activities, the ALJ's consideration was inadequate.  In fact, the passage quoted in Yount's objection appears nowhere in SSR 02-1p.  The ruling does guide the assessment of obesity.  "An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p.  However, having determined that a claimant's obesity does not interfere with her daily activities, the ALJ was not required to state explicitly what that determination implies, that claimant's obesity does not interfere with her ability to perform routine movement and necessary physical activity within the work environment.

In any event, the ALJ incorporated Yount's subjective statements about the limitations imposed by, among other things, her obesity, in the hypothetical presented to the vocational expert ("VE") for light work.  [R. 14].  The ALJ properly considered Yount's non-severe impairment of obesity.  Yount's objection is overruled.

### VII. Conclusion

For the reasons set forth above, Yount's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #23] are overruled, the Magistrate Judge's Report and Recommendation [Dkt. #22] is adopted, and the decision of the Commissioner is affirmed.

ENTERED this 20th day of February, 2015.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT